| | |
|---|---|
| DAVID KNOTT, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| -vs- ) | No. 24-cv-03067-CRL-KLM |
| ) | |
| MICHAEL W. FRERICHS, in his official ) | |
| capacity as Illinois State Treasurer, et al., ) | |
| ) | |
| Defendants. ) | |

## DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

Defendant, MICHAEL FRERICHS, in his official capacity as Illinois State Treasurer ("Treasurer"), respectfully requests that this Honorable Court dismiss Plaintiffs' complaint against him pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that it is barred by the statute of limitations and that Plaintiffs lack standing. In support thereof, Defendant Frerichs states as follows:

### INTRODUCTION

This case involves a challenge to the requirement contained in the Illinois Revised Uniform Unclaimed Property Act (765 ILCS 1026/1 et seq.) ("RUUPA") that:

> A person attempting to collect a contingent fee for discovering, on behalf of an apparent owner, presumptively abandoned property must be licensed as a private detective pursuant to the Private Detective, Private Alarm, Private Security, Fingerprint Vendor, and Locksmith Act of 2004. [765 ILCS 1026/15-1302(e)][1]

Plaintiffs David Knott ("Knott") and United Asset Recovery ("UAR") contend that this limitation placed on those who act as property locators, or "finders" in Illinois constitutes a violation of their rights to free speech and to petition the government under the First Amendment and their due process

---

[1] RUUPA was adopted in 2017 and replaced the prior Uniform Disposition of Property Act (See 765 ILCS 1025/1 et seq.). The prior act contained a provision that is substantially similar to 765 ILCS 1026/15-1302(e), which was originally enacted in 1993. (See 765 ILCS 1025/20(d), repealed via P.A. 100-22).

rights under the Fourteenth Amendment.[2]

All states, including Illinois, have adopted custodial unclaimed property laws. These laws are designed to protect the rights of owners who have forgotten about or otherwise lost touch with property that is rightfully theirs, and to address the problem that the Uniform Law Commission has described as "lucrative silence," where the companies holding these funds have an incentive to communicate as little as possible with the rightful owners. See 74 Ill. Admin Code 760.Appendix A Background Information (2024)[3] [4] and Cerajeski v. Zoeller, 735 F.3d 577, 583 (7th Cir. 2013) quoting Uniform Law Commission, 1995 Unclaimed Property Act Summary (visited Oct. 29, 2013). Unclaimed property is not a major source of revenue for Illinois. For example, in Fiscal Year 2022, the net transfer from Illinois' unclaimed property trust fund was only roughly nineteen hundredths of one percent of state revenues.[5] And while it is correct that the State of Illinois makes use of

---

[2] Plaintiffs also assert a claim for violation of the Privileges and Immunities Clause of the Fourteenth Amendment, which they acknowledge is barred under prior caselaw. Complaint ¶ 162.

[3] "Every state has enacted legislation requiring that holders of presumptively abandoned or unclaimed property report and deliver that property to the state. A majority of states have adopted some form of one of the uniform acts promulgated by the Uniform Law Commission (ULC). The problem of "lucrative silence" by holders motivated the ULC to draft and promulgate the original Uniform Disposition of Unclaimed Property Act (UDUPA) in 1954. Illinois passed its version of UDUPA in 1961. Illinois' current law is based on the ULC's Revised Uniform Unclaimed Property Act (RUUPA) that was approved and recommended for enactment in all states in 2016." 74 Ill. Admin. Code 760.Appendix A (b) (2024).

[4] In Illinois, Administrative Code provisions have the force and effect of statute. See Ress v. Office of State Comptroller, 329 Ill. App. 3d 136 (1st Dist. 2002).

[5] In Fiscal Year 2022, total Illinois state governmental revenues were roughly $122 billion, but only roughly $234 million was transferred from the unclaimed property trust fund and recorded as revenue. This was just over 0.19 percent of Illinois' total revenues. See Illinois Comprehensive Annual Financial Reports for Fiscal Year ended June 30, 2022, available at: https://illinoiscomptroller.gov/annual-comprehensive-financial-report (visited June 3, 2024). And even where funds are recorded as revenue, the State remains legally obligated to pay an owner of such funds, should they later come forward. See Governmental Accounting Standards Board, "Accounting for Escheat Property," Statement No. 21 (1993).
Note that, on a motion to dismiss, a Court properly may take judicial notice of documents in the public record and administrative bodies, press releases, and state court decisions. See Hagan v.

unclaimed property until it is reunited with its owner (see Complaint ¶ 38), it is the goal of the Treasurer to return as much property as possible. Under the administration of Defendant Illinois State Treasurer Michael Frerichs commencing in 2015, nearly $2 billion in cash and securities has been paid to claimants.[6]

Under RUUPA, unclaimed property is held in perpetuity by the Treasurer as custodian for the rightful owner. 765 ILCS 1025/15-804. Apparent owners of unclaimed property can claim their property at any time and recover its full value without being charged any fee by the State. 765 ILCS 1025/15-905(a). The State additionally pays successful claimants interest earnings on cash property, regardless of whether the property was interest-bearing at the time the property was reported. 765 ILCS 1025/15-607.

Plaintiffs allege that the Treasurer's internet-based unclaimed property search website https://icash.illinoistreasurer.gov (hereafter, the "Website") is "little known."[7] Complaint ¶ 40. However, during calendar year 2023, the Treasurer approved 314,154 claims totaling nearly $276 million.[8] In addition to the State's Website, Illinois also participates in a national database, www.missingmoney.com, linking the unclaimed property records of all states, other than Hawaii,

---

Quinn, 838 F. Supp. 2d 805, 809 citing Smith v. Housing Authority of Southbend, 744 F. Supp. 2d 775, 785 (N.D. Ind. 2010) and Perez v. Comcast, 2011 U.S. Dist. LEXIS 126401, 2011 WL 5237577, at* 2 (N.D. Ill. 2011).

[6] See Office of the Illinois State Treasurer. *Illinois State Treasurer Michael Frerichs Returns More than $20 Million to Illinois Residents in April Nearly $2 Billion Returned Since He Took Office*. May 13, 2024. Available at https://illinoistreasurer.gov/TWOCMS/media/doc/may2024_frerichs-returns-more-than-20-million.pdf (visited June 3, 2024).

[7] Plaintiffs do acknowledge however that identifying unclaimed properties through the website "usually…isn't challenging" (Complaint ¶ 42), and Plaintiff even admits that properties can be claimed with ease (see Complaint ¶¶ 44 - 48).

[8] See Office of the Illinois State Treasurer. *Treasurer Frerichs Returned $276 Million in Missing Money in 2023*. January 4, 2024. Available at https://illinoistreasurer.gov/TWOCMS/media/doc/jan2024_frerichs-returns-$276-million-in-2023.pdf (visited June 3, 2024).

which last year experienced 19 million searches and 1 million filed claims, collectively for all participating states.[9] The national website has been repeatedly featured on national television news broadcasts, including a Good Morning America segment broadcast on December 20, 2023 and recorded at Christkindlmarket's Daley Plaza location in Chicago that featured the Treasurer assisting members of the public, from Illinois and other states, to claim tens of thousands of dollars of their missing money.[10]

Through processes branded "Fast Track" and "E-Claiming," the Website allows owners to claim their own property, in many cases, entirely online without any need to submit physical paperwork.[11] Through another process branded "Enhanced Money Match," the Treasurer cross-matches other state databases with the unclaimed property database and pays hundreds of thousands of owners of smaller (less than $5,000) properties without a claim even being filed.[12]

Once again, the Treasurer does not charge owners a fee for any of these services or for either searching for, or claiming, their property.

RUUPA allows finders to assist owners in claiming their property but, in order to protect the

---

[9] *See* National Association of Unclaimed Property Administrators, "How States Return Missing Money," available at https://unclaimed.org/how-states-return-missing-money/ (visited June 3, 2024).

[10] See Office of the Illinois State Treasurer. *State Treasurer Michael Frerichs Returns $64,500 To Salvation Army of Illinois Partnered with Good Morning America and Christkindlmarket for an ABC Missing Money Segment*. December 20, 2023. Available at https://illinoistreasurer.gov/TWOCMS/media/doc/dec2023_frerichs-good-morning-america.pdf (visited June 3, 2024).

[11] See Office of the Illinois State Treasurer. *Claiming Your Cash and Property Just Got Easier State Treasurer Frerichs Announces New Ways to "eClaim" and "Fast Track" Your Unclaimed Property*. January 2, 2018. Available at https://illinoistreasurer.gov/TWOCMS/media/doc/January2018_EclaimingUnclaimedProperty.pdf (visited June 3, 2024).

[12] See Office of the Illinois State Treasurer. *Treasurer Frerichs Returned $276 Million in Missing Money in 2023*. January 4, 2024. Available at https://illinoistreasurer.gov/TWOCMS/media/doc/jan2024_frerichs-returns-$276-million-in-2023.pdf (visited June 3, 2024).

public, it contains a number of restrictions on the agreements they may enter into with unclaimed property owners, including those challenged by Plaintiffs.[13] 765 ILCS 1026/15-1301 and 15-1302. Courts have recognized the legitimate interest that states have in protecting owners from potential harms that may be caused by unscrupulous finders, including the requirement that they be licensed private detectives. See Landi v. Bernard Arkules, 172 Ariz. 126, 133-34 (Ariz. Ct. of App. 1992) (upholding Arizona requirement that locators be licensed private investigators).

The Treasurer disputes that Plaintiffs have adequately alleged that the operation of the challenged provisions results in a denial of any of their constitutional rights.

The instant motion is limited, however, to the more fundamental problems with Plaintiffs' complaint, namely that it is barred by the statute of limitations to the extent their claims are based on a letter they received from the Treasurer more than two years before they filed their complaint, and that they lack standing to assert claims unrelated to this letter because they have failed to allege the requisite injury in fact.[14] Therefore, for the reasons described further below, the entire complaint should be dismissed.

## STATEMENT OF FACTS

Plaintiff Knott is a California-based individual and Plaintiff UAR is a California corporation which is owned and controlled by Knott. Complaint ¶¶ 13-14. Plaintiffs allege that they are in the business of finding unclaimed assets and connecting the assets with their owners for a fee. *Id.* at ¶ 32. In Illinois, that business is controlled and regulated by Article 15 of RUUPA (765 ILCS 1026/15-

---

[13] All but several states regulate finders, although the type of regulation can vary. See Statutory Summary for each state's unclaimed property law available in 2 David J. Epstein, Unclaimed Property Law and Reporting Forms §Introduction to Statutes and Regulations (Matthew Bender, Rev. Ed.).

[14] The Treasurer does not waive, and expressly retains, all available defenses that are not set forth in this motion, including the defense that Plaintiffs have not adequately alleged claims for violations of their rights under the First Amendment and the Fourteenth Amendment.

1301 et seq.) and the accompanying administrative rules regulating "finders." (74 Ill. Admin Code § 760.650).

Plaintiffs allege that on August 5, 2021 they received a letter from the Treasurer's office "ordering them to stop helping clients recover their property unless David and his company obtained private detective licenses in Illinois." Complaint ¶ 60. Plaintiffs further allege that the letter accused plaintiffs of violating 765 ILCS 1026/15-1302 and its implementing regulation 74 Illinois Administrative Code § 760.650. I*d*. at ¶ 64. As a result of their receipt of the Treasurer's August 5, 2021 letter, Plaintiffs allege that they have been prevented from assisting clients in recovering unclaimed property in violation of Plaintiffs' rights under the First Amendment and the Fourteenth Amendment. The Complaint does not include any allegations of any actions taken by Treasurer Frerichs since his office issued its August 5, 2021 letter or of any interactions with the Treasurer's office in the two years prior to March 15, 2024, the date on which Plaintiffs filed their Complaint. Additionally, the Complaint does not include any allegations that, since August 5, 2021, Plaintiffs have identified any additional property being held in custody by the Treasurer that belongs to any of their existing or potential clients.

## STANDARD OF REVIEW

To survive a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, a complaint must contain sufficient facts that when assumed true, "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Though it is unusual to raise the statute of limitations via a section 12(b)(6) motion to dismiss, it is appropriate in cases where the allegations in the complaint itself establish that the complaint is untimely. Flynn v. Donnelly, 793 F. Appx. 431, 434 (7th Cir. 2019), Chicago Bldg. Design, P.C. v. Mongolian House, Inc., 770 F.3d 610, 613–14 (7th Cir. 2014).

# ARGUMENT

**I. PLAINTIFFS' CLAIMS ARE UNTIMELY BASED ON THEIR ALLEGATIONS OF THE TREASURER'S LAST ACTION ON AUGUST 5, 2021.**

Plaintiffs assert claims for purported violations of their constitutional rights under the First Amendment (Count I and II, Complaint ¶¶ 111-41) and the Fourteenth Amendment (Count III and IV, Complaint ¶¶ 142-62). However, there is no direct cause of action available to a litigant complaining that their constitutional rights have been violated. See, e.g., Beary Landscaping, Inc. v. Ludwig, 479 F. Supp. 2d 857, 868 n.7 (N.D. Ill. 2007) ("Precedent teaches that Plaintiffs have no direct cause of action to litigate constitutional claims . . . ."). Instead, such claims must be brought under 42 U.S.C. § 1983 (*Id.*), which plaintiffs cite as one of the bases for the Court's jurisdiction over their complaint (Complaint ¶ 9). Set forth below is an analysis of the reasons why Plaintiffs' claims are subject to dismissal on statute of limitations grounds under 42 U.S.C. § 1983 (along with the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2022, which Plaintiffs also refer to as providing the Court with jurisdiction over their complaint).

The text of 42 U.S.C. § 1983 does not specify a statute of limitations. However, courts have held that the applicable statute of limitations for a claim under § 1983 will be that which the forum state's legislature has provided for personal injury actions. See, e.g., Ashafa v. City of Chicago, 146 F. 3d 459, 461 (7th Cir. 1998). In Illinois that period is two years, as set forth in 735 ILCS 5/13-202. See Amin Libara Equity Corp. v. Village of Oak Lawn, 860 F.3d 489, 493 (7th Cir. 2017). Accordingly, a claim under §1983 must be brought within two years from when the claim accrued. In this context, for purposes of calculating the statute of limitations, a claim accrues when "the plaintiff knows or should know that his or her constitutional rights have been violated." Janus v. Am. Fed'n. of State, 942 F.3d 352, 361 (7th Cir. 2019) (quoting Draper v. Martin, 664 F.3d 1110, 1113 (7th Cir. 2011)). Application of these standards to the allegations of the complaint establishes that all of Plaintiffs' § 1983 claims are untimely.

Specifically, the complaint makes clear that Plaintiffs knew of the bases for their claims as of August 5, 2021, the date they allege that the Treasurers' office sent them a letter informing them that they were violating 765 ILCS 1026/15-1302, and "order[ed] them to stop helping clients recover their property unless [plaintiffs] obtained private detective licenses in Illinois." Complaint ¶¶ 60-65. It is this information, which they unquestionably were aware of as of August 5, 2021, that Plaintiffs contend has caused their constitutional rights to be violated. Accordingly, the allegations in Plaintiffs' complaint establish that the last date upon which the instant suit could have been filed is August 5, 2023. Because Plaintiffs filed their complaint on March 15, 2024, the instant complaint is tardy by nearly six months.

Plaintiffs also reference the Declaratory Judgment Act (28 U.S.C. § 2201), but that does not save their claims from dismissal. Like 42 U.S.C. § 1983, the Declaratory Judgment Act does not specify a statute of limitations. However, the Act is also not an independent source of federal jurisdiction. Schilling v. Rogers, 363 U.S. 666, 677 (1960). The availability of such relief depends on "the existence of a judicially remediable right." *Id.* Therefore, because Plaintiffs' § 1983 claims are untimely and must be dismissed, then this Court also loses jurisdiction over their undefined claims under the Declaratory Judgment Act.

## II. PLAINTIFFS DO NOT HAVE STANDING TO ASSERT CLAIMS UNRELATED TO THE TREASURER'S AUGUST 5, 2021 LETTER.

In order to establish standing, a plaintiff must demonstrate that it has 1) suffered an injury in fact, 2) that is fairly traceable to the challenged conduct of defendant, and 3) that is likely to be redressed by a favorable decision. Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 185 (2000). Plaintiffs have the burden of establishing standing. City of Los Angeles v. Lyons, 461 U.S. 95, 102 (1983). To the extent that the complaint can be read to assert claims unrelated to those arising out of the August 5, 2021 letter, which as described above, are untimely, Plaintiffs are unable to meet their burden.

Indeed, without consideration of the August 5, 2021 letter, Plaintiffs, a California resident and a California corporation, have essentially alleged only that they wish to do business as finders in Illinois on a contingency fee basis, but are concerned that any claims they make will be rejected by the Treasurer due to the operation of 765 ILCS 1026/15-1302(e) and 74 Illinois Administrative Code § 760.650(c)(2). Plaintiffs make vague allegations about "three clients" they represented in August 2021, without identifying the clients or the unclaimed property allegedly being held in custody by the Treasurer. Complaint ¶ 94. They have not, however, identified any existing clients who are the apparent owners of specified unclaimed property in Illinois being held in custody by the Treasurer. Instead, they concede that they have "helped no clients find unclaimed property in Illinois" since the August 2021 letter. Complaint ¶ 95. Likewise, they do not allege that they have had any interactions with the Treasurer's office in the past two years that would give rise to non-stale claims. In the absence of any such specific allegations, Plaintiffs lack the type of injury in fact necessary to give rise to standing. See Love Church v. Evanston, 896 F.2d 1082, 1086 (7th Cir. 1991) ("speculative claims cannot constitute distinct and palpable injury for purposes of standing").[15]

In short, Plaintiffs lack standing to maintain a suit seeking to invalidate a statutory provision based on the mere possibility they will identify unclaimed property in Illinois for a potential client that retains them to assist in recovering their property on a contingency fee basis. This is precisely the type of "conjectural" and "hypothetical" claim that the Constitution's Article III standing

---

[15] Plaintiffs' lack of standing is clearly demonstrated by consideration of Count II of the complaint, which alleges a purported violation of plaintiffs' First Amendment right to petition the government. This count alleges that Plaintiffs are being prevented by 76 Ill. Admin. Code 760.650(c)(2) (2024) from "communicating truthful documents and information to the Treasurer . . . so that the Treasurer may fulfill his statutory obligation to return the property to the owner under 765 ILCS 1026/15-904." Complaint ¶ 129. However, even if Plaintiffs were to allege that they had a client who is the apparent owner of unclaimed property in the Treasurer's custody, it would be the client, not Plaintiffs, who could raise a potential constitutional challenge to how the Illinois Administrative Code is allegedly impeding its ability to petition the government in order to claim its property.

requirements are intended to prevent. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992).[16]

Recognizing their lack of a currently cognizable injury, Plaintiffs may argue that they have standing to bring this suit as a "pre-enforcement" action. In order to have standing to bring a pre-enforcement action, Plaintiffs must show that they have "an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder." Babbitt v. Farm Workers, 442 U.S. 289, 298 (1979). Even assuming for purposes of this motion that Plaintiffs have alleged that the statutes they challenge potentially could affect a constitutional interest, they are unable to meet these requirements.

First, to have standing to bring this type of challenge, the "pre-enforcement review" must take place "under circumstances that render the threatened enforcement sufficiently imminent." Susan B. Anthony List v. Driehaus, 573 U.S. 149, 159 (2014). In other words, the "plaintiff must face a 'real and immediate' threat of future injury as opposed to a threat that is merely 'conjectural or hypothetical.'" Simic v. City of Chicago, 851 F.3d 734, 738 (7th Cir. 2017). As described above, however, any future injury that Plaintiffs might suffer is entirely dependent on a number of factors that may or may not take place. This includes Plaintiffs identifying unclaimed property in Illinois for a client that wishes to retain them on a contingency fee basis to assist in claiming the property

---

[16] The recent decision in Mousseau v. Crum, 2024 U.S. Dist. Lexis 36794 (Alaska Dist. March 4, 2024), aptly illustrates why the speculative nature of Plaintiffs' claims deprives them of standing. In that case, the court dismissed a complaint involving constitutional challenges brought by owners of unclaimed property against the Alaska Department of Revenue under Alaska's unclaimed property laws for lack of standing due to the plaintiffs' failure to allege concrete harm. As the court explained:

While enforcement of the [the Alaskan Uniform Unclaimed Property Act] could result in an alleged injury to a person's property in certain circumstances — for example, in the event of a wrongly rejected claim for return of property, failure to pay interest owed under the statute, or the State's liquidation of securities or other property in its custody — Plaintiffs have not alleged such individualized harm. Indeed, any such allegation made by Plaintiffs here would be speculative and unripe; Plaintiffs have not yet filed a claim with the [Department of Revenue] for return of their property, and therefore the State has not made any determination that could constitute a deprivation or diminishment of that property. 2024 U.S. Dist. Lexis 36794, at *10.

from the Treasurer and that claim being denied. Plaintiffs' failure to allege that they have identified any such clients or that they have had any interactions at all with the Treasurer within the two years prior to filing their suit, indicates they do not face the type of imminent risk of injury required to have standing to bring a pre-enforcement challenge. See, e.g., Cabral v. City of Evansville, 759 F.3d 639, 644 (7th Cir. 2014) (finding that plaintiff did not have standing to bring a claim that an injunction precluding the defendant city from granting a permit to erect a religious display violated plaintiff's First Amendment rights where plaintiff had not applied for a permit from city, even though Court recognized that if plaintiff had sought a permit it likely would have been denied).[17]

Additionally, Plaintiffs are unable to establish that they face a credible threat of prosecution. In this regard, the Treasurer does not have any authority under RUUPA to prosecute finders for violating either 765 ILCS 1026/15-1302(e) or 74 Illinois Administrative Code § 760.650(c)(2), or even to impose any sort of fine or penalty. Instead, failure to comply with these provisions merely results in the denial of a potential claim, which may be refiled in the future. Moreover, although Plaintiffs allege that if they were to violate these provisions "they would face possible criminal prosecution and hefty civil penalties for the unlicensed practice of private detective work" under the Private Detective, Private Alarm, Private Security, Fingerprint Vendor, and Locksmith Act of 2004 (the "Act") (Complaint ¶ 102), they do not allege that any finder has been prosecuted or fined in the more than 30 years that these restrictions have been included in Illinois' unclaimed property laws. Further, Plaintiffs allege that they do not believe that the Illinois Department of Financial and Professional Regulation ("IDFPR") would take any action against them under the Act independent of the requirements contained in RUUPA. Complaint ¶ 86. And, notably, Plaintiffs do not allege

---

[17] Although Plaintiffs allege that the operation of 765 ILCS 1026/15-1302(e) and 74 Ill. Admin. Code 760.650(c)(2) (2024) means that they "cannot read, analyze, or communicate information and documents concerning their clients' or potential clients' unclaimed property to anyone, including the clients or potential clients who own the property" (Complaint ¶ 117) this is facially untrue. Nothing in these statutes prohibit these activities. Instead, Plaintiffs merely risk denial of their claims made on behalf of a client if they do not comply with RUUPA's requirements.

that IDFPR brought, or even threatened to bring, civil or criminal prosecution against them when they did try to act as a finder under RUUPA without the required license. In short, Plaintiffs are unable to allege that they face a legitimate risk of prosecution by failing to comply with the statutory provisions underlying their claims. See, e.g., Sweeney v. Raoul, 990 F.3d 555, 559 (7th Cir. 2021) ("[A] party may advance a pre-enforcement challenge before suffering an injury -- so long as the threatened enforcement is 'sufficiently imminent.'") (citing Babbitt, 442 U.S. at 298-99 ("When plaintiffs 'do not claim that they have ever been threatened with prosecution, that a prosecution is likely, or even that a prosecution is remotely possible,' they do not allege a dispute susceptible to resolution by a federal court.")).

The Court should reject any argument that Plaintiffs have standing to bring a pre-enforcement challenge to set aside a statutory provision based on the hypothetical possibility that Plaintiffs may suffer an injury in the future, which would, at most, only result in their claim on behalf of a yet-to-be-identified client being denied due to their non-compliance with the finder requirements. Instead, Plaintiffs should be required to establish that they have suffered an actual, non-stale, injury due to alleged violations of their constitutional rights before they are found to have standing, rather than allowing them to prematurely seek to invalidate statutory provisions that they do not favor based on several theoretical actions Plaintiffs and the Treasurer might take.

## CONCLUSION

Plaintiffs' Complaint against Treasurer Michael Frerichs, acting in his official capacity, must be dismissed. Plaintiffs' allegations, on their face, establish that Plaintiffs' claims arising out of the August 5, 2021 letter are untimely and that Plaintiffs do not have standing to assert claims independent of the August 5, 2021 letter. Therefore, both of plaintiffs' claims should be dismissed as untimely and due to lack of standing.

WHEREFORE, Defendant Frerichs requests the dismissal of Plaintiffs' complaint via 12(b)(6).

Respectfully submitted,

MICHAEL FRERICHS,

Defendant,

Steven Sturm, #6256744
Special Assistant Attorney General
1 East Old State Capitol Plaza
Springfield, IL 62701
(217) 720-8555 Phone

KWAME RAOUL, Attorney General,
State of Illinois,

Attorney for Defendant,

Email:ssturm@illinoistreasurer.gov

By: s/

Steven Sturm, #6256744
Special Assistant Attorney General

IN THE UNITED STATES DISTRICT COURT
FOR CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| DAVID KNOTT, et al., | ) |
| Plaintiffs, | ) |
| -vs- | ) No. 24-cv-03067-CRL-KLM |
| MICHAEL W. FRERICHS, in his official capacity as Illinois State Treasurer, et al., | ) |
| Defendants. | ) |

## CERTIFICATE OF SERVICE

I hereby certify that on June 7, 2024, the foregoing document, ***Motion to Dismiss***, was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Robert Johnson – rjohnson@ij.org
James T. Knight, II – jknight@ij.org

and I hereby certify that on the same date, I caused a copy of same to be mailed by United States Postal Service, in an envelope fully prepaid and properly addressed, to the following participant:

None

Respectfully submitted,

MICHAEL FRERICHS,

Defendant,

Steven Sturm, #6256744
Special Assistant Attorney General
1 East Old State Capitol Plaza
Springfield, IL 62701
(217) 720-8555 Phone

KWAME RAOUL, Attorney General,
State of Illinois,

Attorney for Defendant,

Email:ssturm@illinoistreasurer.gov

By: s/

Steven Sturm, #6256744
Special Assistant Attorney General

Case No. 24-3067-CRL-KLM